**TEXAS A & M UNIVERSITY, Geochemical and Environmental Research Group, and the College of Geosciences and Maritime Studies, Appellants,**

v.

**William H. CHAMBERS, Appellee.**

**No. 03–99–00851–CV.**

Court of Appeals of Texas, Austin.

Nov. 2, 2000.

Rehearing Overruled Dec. 14, 2000.

Peter B. Plotts, Asst. Atty. Gen., Austin, for appellants.

Mark W. Shomaker, West, Webb, Allbritton & Gentry, P.C., College Station, for appellee.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and PATTERSON.

BEA ANN SMITH, Justice.

William H. (Hank) Chambers, former lab manager of the Texas A & M Geochemical and Environmental Research Group (the Research Group), sued Texas A & M University, the Research Group, and the College of Geoscience and Maritime Studies (collectively Texas A & M) under the Texas Whistleblower Act for allegedly terminating him in retaliation for a report he made to Texas A & M's internal audit department. *See* Tex.Gov't Code Ann. §§ 554.001–.010 (West 1994 & West Supp. 2000). After five days of trial, a jury returned a verdict in favor of Chambers and awarded him over $195,000 in damages. The trial court rendered judgment on the verdict.

Texas A & M now appeals from that judgment contending that the trial court erred by: (1) including the statutory presumption contained in the Whistleblower Act as an instruction in the jury charge; (2) excluding Chamber's psychological records; (3) denying its motion to disregard the jury's award for emotional pain; and (4) refusing to delete the award of prejudgment interest on the award of damages for future earnings and failing to calculate prejudgment interest as simple interest. We sustain Texas A & M's first and fourth points of error, reverse the judgment of the trial court, and remand the cause for new trial. Because our resolution of Texas A & M's first point of error renders points two and three moot, we do not consider the merits of those contentions.

## FACTUAL BACKGROUND

The Research Group is a team of highly specialized scientists who assist federal agencies and private businesses by conducting various research projects on a contractual basis. In 1992, the Research Group was hired by Creosote Council II—a trade association for producers of the wood-pesticide creosote—to analyze samples of manufactured creosote and submit its findings to the Environmental Protection Agency for product registration and licensing purposes. In order to ensure that the Creosote Council companies would be able to maintain their licenses to manufacture and sell creosote, the Research Group agreed to conduct its study in compliance with the good laboratory practice regulations of the Federal Insecticide Fungicide and Rodenticide Act (FIFRA) and certify its compliance in writing to the Creosote Council.

The Research Group began the creosote study in 1992. In the summer of 1996, the Research Group was in the last stages of performance under the contract when an executive at the Creosote Council became concerned about the scientists' lab practices. Consequently, the Creosote Council hired Kristin Hoover, an independent auditor, to evaluate the Research Group's work. Her findings formed the basis of this lawsuit.

Hoover's report to the Creosote Council reflected that the Research Group had failed to comply with the good laboratory practice regulations of FIFRA in several ways during the creosote study. Hoover also found that Research Group personnel, specifically Dr. Mahlon Kennicutt, had untruthfully certified in writing to the Creosote Council that the Research Group had conducted its research in compliance with

FIFRA. When Chambers discovered Hoover's findings, he became concerned that the false acknowledgments Dr. Kennicutt had made to the Creosote Council amounted to illegal behavior. He reported these concerns to the Texas A & M Department of Internal Audit in August of 1996. Dr. Kennicutt was Chambers' direct supervisor at the time.

Over the next several months, Dr. Kennicutt implemented several changes at the Research Group, some of which directly affected Chambers. Chambers' signatory authority was removed from the accounts he supervised and he was required to meet weekly with Dr. Kennicutt to go over the details of his assignments even though he was in a managerial position. Chambers believes that these actions were adverse to his employment with the Research Group. He further alleges that his eventual termination in April of 1997 was a direct result of his report to Internal Audit of what he believed was illegal behavior in the creosote study.

Texas A & M, however, presented evidence at trial of ongoing concerns about Chambers' work performance and several unsuccessful attempts to help him remedy the problems that allegedly riddled his research projects. Dr. Kennicutt testified at trial that he did not become aware of Chambers' disclosures to Internal Audit until this litigation began and thus did not feel any personal resentment towards Chambers during the time period in question. He even requested that Chambers receive a salary raise in October of 1996. Texas A & M contends that Chambers was terminated because his job performance never improved.

## DISCUSSION

■ Texas A & M complains in its first point of error that the trial court erred in including the statutory presumption of retaliation in its charge to the jury. The court instructed the jury as follows: "If the termination of, or adverse personnel action against, a public employee occurs within 90 days after the date on which the employee reports a violation of law, the termination or adverse personnel action is presumed, subject to rebuttal, to be because the employee made the report." This instruction tracks the language of the Whistleblower Act. *See* Tex.Gov't Code Ann. § 554.004 (West Supp.2000). Texas A & M contends that including the proof in the charge was an improper comment on the weight of the evidence that incorrectly shifted the burden of proof to the defendants.[1]

■ Because a trial court has considerable discretion in framing a jury charge, *Redwine v. AAA Life Insurance Co.*, 852 S.W.2d 10, 14 (Tex.App.—Dallas 1993, no writ), we must determine only whether the court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). Texas Rule of Civil Procedure 277 authorizes the court to submit explanatory instructions and definitions that will assist the jury in answering the jury questions. Tex.R.Civ.P. 277; *Redwine*, 852 S.W.2d at 14; *Sanders v. Davila*, 593 S.W.2d 127, 129 (Tex.Civ. App.—Amarillo 1979, writ ref'd n.r.e.). "Still, an instruction must be correct to be a proper one authorized by the rule." *Sanders*, 593 S.W.2d at 129.

■ A presumption "may not properly be the subject of an instruction to the

---

1. To preserve a complaint for appellate review, a party must make a timely objection to the trial court and state specific grounds for the desired ruling if the specific grounds are not apparent from the context. *Redwine v. AAA Life Ins. Co.*, 852 S.W.2d 10, 13 (Tex. App.—Dallas 1993, no writ). It is insufficient to object to a jury charge by stating only that the instruction constitutes a comment on the weight of the evidence. *Id.* Texas A & M, however, objected to the inclusion of the presumption in the jury charge by stating that it would improperly shift the burden of proof to Texas A & M because the presumption should have dropped out of the case. This objection was specific enough to preserve Texas A & M's complaint for appellate review. *See id.*

jury." *Armstrong v. West Tex. Rig Co.,* 339 S.W.2d 69, 74 (Tex.Civ.App.—El Paso 1960, writ ref'd n.r.e.); *see also Glover v. Henry,* 749 S.W.2d 502, 504 (Tex.App.— Eastland 1988, no writ); *Sanders,* 593 S.W.2d at 130. Its inclusion is improper because the sole effect of a presumption is to fix the burden of producing evidence. *United Founders Life Ins. Co. v. Carey,* 347 S.W.2d 295, 307 (Tex.Civ.App.—Austin 1961), *rev'd on other grounds,* 363 S.W.2d 236 (Tex.1962); *Armstrong,* 339 S.W.2d at 74. A presumption is nothing more than a rule for the guidance of the trial judge in locating the burden of production at a particular time. *United Founders,* 347 S.W.2d at 307; *Armstrong,* 339 S.W.2d at 74. In whistleblower cases, the statutory presumption of retaliation relieves the plaintiff of the *initial* burden to prove that he was terminated for reporting allegedly illegal activities. *Schindley v. Northeast Tex. Cmty. Coll.,* 13 S.W.3d 62, 67 (Tex. App.—Texarkana 2000, pet. denied). This rule of procedure aids the plaintiff because the evidence necessary to establish the plaintiff's case is often exclusively within the possession of the defendant. *Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d 354, 358 (Tex.1971). The purpose of the presumption is to "smoke out" the defendant and compel her to disclose the facts within her knowledge. *Id.* When, however, the defendant discloses the facts in her possession and such evidence is sufficient to support a finding of non-retaliation, the case proceeds as if no presumption ever existed. *See id.; Texas Natural Res. Conservation Comm'n v. McDill,* 914 S.W.2d 718, 724 (Tex.App.—Austin 1996, no writ); *Garza v. City of Mission,* 684 S.W.2d 148, 152 (Tex.App.—Corpus Christi 1984, writ dism'd w.o.j.). "[T]here is no presumption aiding the plaintiff after the presumption is rebutted by positive evidence to the contrary." *Robertson,* 468 S.W.2d at 358.

In the instant case, Texas A & M presented ample testimony and documents to rebut the presumption that its motive for firing Chambers was based on Chambers'

report to Internal Audit. Dr. Kennicutt testified that he was unaware of Chambers' report to Internal Audit about the creosote matter. He and the Resource Group's chief financial officer, Jeannie Baggett, testified that they were having difficulty getting Chambers to meet deadlines and provide complete and accurate information when they requested it. Baggett finally made an official complaint to the Research Group's general director. Memos were produced that reflected Dr. Kennicutt's concerns about Chambers' work performance throughout the fall of 1996 and spring of 1997; other documents corroborated the testimony that Dr. Kennicutt requested a raise for Chambers during this time period.

■ The evidence produced by Texas A & M at trial rebutted the presumption that Chambers was fired for reporting the creosote problems to Internal Audit. Chambers argues in his brief, however, that there is no quantitative measure in Texas for determining whether this rebutting evidence was *sufficient* to overcome the statutory presumption and that we must defer to the trial court's decision to allow the presumption to remain active in the case. This contention is inconsistent with Texas case law.

Texas courts agree that a presumption is rebutted when "positive evidence to the contrary" is introduced. *See id.; Southland Life Ins. Co. v. Greenwade,* 138 Tex. 450, 159 S.W.2d 854, 858 (1942). The supreme court explained: "[A] presumption is an artificial thing, a mere house of cards, which one moment stands with sufficient force to determine an issue, but at the next, by reason of the slightest rebutting evidence, topples utterly out of consideration of the trier of facts." *Combined Am. Ins. Co. v. Blanton,* 163 Tex. 225, 353 S.W.2d 847, 849 (1962). In *Texas Natural Resource Conservation Commission v. McDill,* we held that the Commission rebutted the presumption of retaliation when it introduced evidence at trial "suggesting

no connéction between McDill's report and his discharge...." *McDill,* 914 S.W.2d at 724. That evidence included testimony from the plaintiff's co-workers and supervisors and various documents relating to complaints made in relation to the plaintiff's conduct at work. Similarly, in *Garza v. City of Mission,* the court of appeals held that the defendant introduced sufficient evidence to rebut the presumption of retaliation when the plaintiff's supervisors testified that they had no knowledge of the plaintiff's whistleblowing before his termination. *Garza,* 684 S.W.2d at 152–53. The evidence produced by Texas A & M strongly parallels the evidence held sufficient to rebut the presumption of retaliation in those two cases. Because Texas A & M produced evidence to rebut the presumption of the Whistleblower Act, the presumption should have disappeared entirely. *See McDill,* 914 S.W.2d at 724. Instead of vanishing, however, the statutory presumption appeared verbatim in the jury charge.

 Including a presumption in the jury charge which has been rebutted by controverting facts is an improper comment on the weight of the evidence. *Glover,* 749 S.W.2d at 504–05. At oral argument, Chambers conceded that it was error to submit the presumption of retaliation to the jury. He maintains, however, that its submission did not amount to reversible error.

 Reversal is required if an improper comment on the weight of the evidence was calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.App.P. 44.1(a)(1); *Redwine,* 852 S.W.2d at 14. The inclusion of the rebuttable presumption of retaliation in the charge placed a heavier burden of proof on Texas A & M than was required by law. *See Graves v. Komet,* 982 S.W.2d 551, 554–55 (Tex.App.—San Antonio 1998, no pet.). "An instruction that misstates the law cannot be expected to produce a correct verdict." *Sanders,* 593 S.W.2d at 130. The evidence in this case was vigorously disputed, and the jury might well have found in favor of either of the parties absent the presumption instruction. A superfluous instruction is more likely to improperly influence a jury in a close case. *Reinhart v. Young,* 906 S.W.2d 471, 473 (Tex.1995). Instructing the jury to presume that Texas A & M unlawfully retaliated against Chambers could have persuaded the jury to find in favor of Chambers. We must, therefore, reverse. *See Redwine,* 852 S.W.2d at 14. Because our resolution of Texas A & M's first point of error results in reversal, points of error two and three need not be considered.[2]

## CONCLUSION

We hold that including the presumption in the jury charge was error that probably caused the rendition of an improper judg-

---

**2.** The jury awarded Chambers damages for past lost wages and benefits, future lost wages and benefits, and emotional pain. The trial court rendered judgment accordingly, adding prejudgment interest on the entire award at the rate of ten percent per annum. Texas A & M filed a motion to modify, requesting that the court exclude Chambers' lost future earnings from the prejudgment interest calculation and asking the court to eliminate the annual compounding. The trial court overruled this motion by operation of law. *See* Tex.R.Civ.P. 329b(b). The parties agree that the trial court erred in failing to modify the judgment to exclude prejudgment interest on the jury's award of future lost earnings and to recalculate prejudgment interest as simple interest instead of compound interest.

We note that the supreme court addressed this issue in *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507 (Tex. 1998). In that case, the court held that prejudgment interest on damage awards is to be calculated as simple interest. *Id.* at 532. In addition, in a case such as this, prejudgment interest should not be calculated on a damage award for future lost wages and benefits. *See Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 554 (Tex.1985). Prejudgment interest is awarded to compensate the injured party for the lost use of money; that justification does not apply to money which has yet to be earned. *See id.* at 554–55.

ment. It was also error to award prejudgment interest on future earnings damages and to compound such interest annually. We need not decide the other two issues complained of on appeal. We reverse the trial court's judgment and remand this cause to the trial court for a new trial.