

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00080-CV

LINDA MOORE, APPELLANT

V.

LUBBOCK STATE SUPPORTED LIVING CENTER, OPERATED
BY TEXAS HEALTH AND HUMAN SERVICES, APPELLEE

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2018-532,239, Honorable Ruben Gonzales Reyes, Presiding

June 17, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant Linda Moore sued appellee Lubbock State Supported Living Center ("LSSLC") under the Texas Whistleblower Act, claiming that LSSLC terminated her employment because she reported violations of the law by LSSLC employees.[1]  LSSLC filed a plea to the jurisdiction in which it contended that Moore failed to produce legally

---

[1] The Texas Whistleblower Act is contained in chapter 554 of the Texas Government Code.  *See* TEX. GOV'T CODE ANN. §§ 554.001-.010 (West 2020).

sufficient jurisdictional evidence of two elements of her claim. The trial court granted LSSLC's plea, and Moore brought this appeal. We affirm.

## Background

Moore began working for LSSLC as a residential coordinator overseeing the Sparrow Home in November of 2017. In April of 2018, she was moved to the Aspen Home. While at the Sparrow and Aspen homes, Moore believed that staff members were not accurately reporting the time they had worked. Moore reported her concerns to her supervisors, then to the facility director, Libby Allen. Moore asked Allen to allow her to review the facility's video footage to determine the actual times that employees were arriving to and departing from work. Allen denied this request. In June of 2018, Moore was moved to the Rose Home at LSSLC. According to Moore, she reported her concerns about inaccurate timekeeping to the Texas Health and Human Services Commission's Office of Inspector General (OIG) in June and July of 2018.

On the morning of August 1, 2018, Moore received a written warning stating that she had been counseled for performance issues on six occasions from April of 2018 to June of 2018. The warning further stated that multiple complaints had been made against Moore from March of 2018 to May of 2018. Moore disputed these statements.

Later on August 1, 2018, an LSSLC resident became ill and was taken to the emergency room by ambulance. LSSLC policy requires a staff member to accompany any resident who is taken to the hospital. At the time, Moore was on a preplanned outing away from the LSSLC campus with two staff members and another resident. According to LSSLC, Moore was notified via telephone that she needed to take a staff member to

the hospital to be with the resident, but she failed to do so. However, Moore claimed that she was not notified of the situation and did not learn that the resident was at the hospital until she returned to LSSLC. In any event, the resident was alone at the hospital for several hours, in violation of LSSLC policy.

Moore's Unit Director, Curtis Anderson, initiated disciplinary action as a result of the August 1 incident. He delivered a disciplinary action notice to Moore on September 18, 2018. The notice stated that Moore had failed to properly carry out her managerial duties and failed to follow a directive to take a staff member to the hospital. The notice also reiterated that Moore had been warned of inadequate performance previously. Moore responded with a rebuttal letter. After reviewing the letter, Anderson decided to proceed with termination, and Moore was terminated effective September 20, 2018.

Moore then filed this lawsuit under the Whistleblower Act. She alleged that she was terminated for reporting falsified time records to the OIG, not for the reasons stated by LSSLC. LSSLC filed a motion for summary judgment and a plea to the jurisdiction, contending that the trial court lacks jurisdiction. The trial court granted LSSLC's plea to the jurisdiction and denied its motion for summary judgment as moot. On appeal, Moore contends that the trial court erred in granting LSSLC's plea.[2]

---

[2] Moore also contends that the trial court erred in granting LSSLC's motion for summary judgment. However, because the record reflects that the motion for summary judgment was denied, we limit our review to the plea to the jurisdiction.

3

Legal Standards

A plea to the jurisdiction is a dilatory plea that challenges the trial court's jurisdiction to hear the subject matter of the cause of action. *Timmons v. Univ. Med. Ctr.*, 331 S.W.3d 840, 843 (Tex. App.—Amarillo 2011, no pet.) (citing *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)). Because the existence of jurisdiction presents a question of law, we review the trial court's ruling on a plea to the jurisdiction de novo. *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 156 (Tex. 2007).

LSSLC is operated by the Texas Health and Human Services Commission. As such, it is a governmental entity entitled to governmental immunity. *See Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012). A trial court lacks subject matter jurisdiction over a governmental unit that is immune from suit unless the Texas Legislature has expressly waived immunity. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009). The Whistleblower Act contains one such express legislative waiver of governmental immunity, providing that immunity is "waived and abolished to the extent of liability for the relief allowed" under the Act. TEX. GOV'T CODE ANN. § 554.0035; *Lueck*, 290 S.W.3d at 883 (elements for establishing jurisdiction are coextensive with those for proving liability).

The Whistleblower Act provides, "A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002(a). To prevail on a claim under the Act, a

4

plaintiff is required to prove: (1) that she was a public employee, (2) that she reported a violation of law in good faith, (3) that the violation of law reported was committed by her employing governmental entity or another public employee, (4) that the report was made to an appropriate law enforcement authority, and (5) that her employing governmental entity took an adverse personnel action against her because of the report. *Hennsley v. Stevens*, 613 S.W.3d 296, 302 (Tex. App.—Amarillo 2020, no pet.).

Where, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we must consider relevant evidence submitted by the parties to resolve the jurisdictional issues. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). The trial court may consider affidavits and other summary judgment-type evidence. *FKM P'ship v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 628 (Tex. 2008). In our review, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. If the evidence creates a fact question on the jurisdictional issue, the trial court cannot grant the plea, as the issue is one for the factfinder to resolve. *Id.* at 227-28.

Analysis

LSSLC does not dispute that Moore was a public employee or that the OIG was an appropriate law enforcement authority to receive her complaint. Instead, LSSLC contends that Moore did not made a good faith report of a violation of law and was not terminated because of any such report. By her appeal, Moore claims that she sufficiently established the challenged elements. We will first consider the question of whether

5

Moore established a causal connection between her report of wrongdoing and her termination.

Causal connection between report and termination

To establish the causation element of her Whistleblower Act claim, Moore must establish that LSSLC terminated her because she reported a violation of the law to the OIG. *Office of Atty. Gen. of Tex. v. Rodriguez*, 605 S.W.3d 183, 191 (Tex. 2020); *Texas Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995). As Moore notes in her brief, she is entitled to the benefit of the Act's presumption of causation because she was terminated within 90 days of making her report. TEX. GOV'T CODE ANN. § 554.004(a) ("adverse personnel action is presumed, subject to rebuttal, to be because the employee made the report" if action occurs not later than 90th day after date on which employee reports violation). However, this statutory presumption is rebutted, becoming a nullity, once a defendant employer produces sufficient evidence to support a finding that it did not take the adverse personnel action because of the employee's report. *Tex. A & M Univ. v. Chambers*, 31 S.W.3d 780, 784-85 (Tex. App.—Austin 2000, pet. denied).

Here, Moore averred in her affidavit that she made reports to the OIG in June and July of 2018 that staff members were engaged in time fraud by falsifying their time sheets. Moore testified that following her reports, she was subjected to retaliation, first by receiving a written warning, which she deemed "a sham," on August 1, and then by being terminated in September.

LSSLC presented evidence that Moore was discharged from employment for legitimate, non-retaliatory reasons, including Moore's lack of professionalism, poor job

6

performance, a safety incident arising when Moore failed to ensure that staff members had necessary keys, and the August 1 incident involving the hospitalized resident. LSSLC supported its position with affidavits from four LSSLC employees and an OIG investigator:

- Elizabeth Hodgen, LSSLC's assistant director of programs, testified regarding employee complaints made against Moore,[3] Moore's failure to correct performance issues, the key incident, and the August 1 incident. Hodgen explained that Moore's moves from the Sparrow Home to the Aspen Home and then to the Rose Home were efforts by LSSLC to give her a "fresh start" following problems with her performance and complaints from staff members.

- Joquaila McDaniel, an LSSLC direct service provider and home team lead, testified that on August 1, she told Collier Ward in a phone call that a resident was going to the hospital and needed staff to accompany him, and that she heard Moore reply "okay," confirming that she heard the directive.

- Collier Ward, an LSSLC direct service professional, was with Moore on the off-campus outing on August 1. He testified that when he spoke with McDaniel, he put his telephone on speaker mode and held it close to Moore so that she could hear. He heard McDaniel say a resident was going to the hospital and that somebody needed to go there with him. He also heard Moore respond, "Okay."

---

[3] Copies of the complaints made regarding Moore were attached to Hodgen's affidavit.

- Curtis Anderson, the unit director at LSSLC, testified that on August 1, he instructed McDaniel to call Moore and have her send one of the staff with her to the hospital to be with the resident. Following Moore's failure to do so, Anderson initiated disciplinary action and eventually terminated Moore's employment. Additionally, Anderson testified, "I was not aware that Ms. Moore had made any complaint with the OIG at the time of her termination."

- Richard McDowell, an investigator for the OIG, testified that he interviewed Moore on July 10, 2018, regarding her complaints that she was subjected to employment retaliation for filing a complaint against her supervisor. He testified that Moore stated that "some of the staff members who made complaints against her had problems with leave and attendance." McDowell stated that he did not take any of Moore's statements to constitute a report of illegal activity by any employees at LSSLC. McDowell was not aware of any other reports made by Moore to the OIG.

Thus, LSSLC presented ample evidence to rebut the presumption that its motive for firing Moore was based on her statements to the OIG. With the presumption rebutted, Moore had the burden to raise a fact issue showing a causal connection. Circumstantial evidence can be sufficient to establish this causal link. *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67-68 (Tex. 2000). Such evidence includes (1) knowledge of the report of illegal conduct, (2) expression of a negative attitude, (3) failure to adhere to established company policies regarding employment decisions, (4) discriminatory treatment in comparison to similarly situated employees, and (5) evidence that the stated reason for

the adverse employment action was false. *Id.* at 69. A plaintiff need not present evidence of all five categories to prove causation. *Tex. Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842, 856 (Tex. App.—Austin 2007, pet. denied).

Moore directs us to no evidence in the record indicating that LSSLC personnel expressed a negative attitude toward her after she reported misconduct to the OIG, that LSSLC failed to follow applicable policies with respect to how it treated Moore, or that it treated Moore differently than similarly-situated employees.

As for the first factor, knowledge of the report of illegal conduct, LSSLC presented evidence that Anderson, the LSSLC employee who terminated Moore, had no knowledge that Moore reported any misconduct to the OIG. Via affidavit, Anderson testified, "I was not aware that Ms. Moore had made any complaint with the OIG at the time of her termination." Moore denied this, stating in her affidavit:

> I am aware that Mr. Anderson claims that he did not know that I had made a complaint to the OIG. This is not true. As the Unit Director of the Rose House where I worked in July 2018, Mr. Anderson was my direct supervisor. As my direct supervisor, Mr. Anderson knew at the time of my meeting in July that I was meeting with an investigator with the OIG.

Moore's unsupported assertion that Anderson knew she was meeting with an OIG investigator is not evidence that Anderson knew that Moore reported a violation of law, committed by LSSLC or LSSLC employees, to the OIG. *See Office of the Atty. Gen. of Tex. v. Rodriguez*, 605 S.W.3d 183, 197 (Tex. 2020) (without evidence that decisionmaker knew about report, the "stated reasons [for termination] could not be pretextual"); *Kirkland v. City of Austin*, No. 03-10-00130-CV, 2012 Tex. App. LEXIS 2769,

9

at *6-7 (Tex. App.—Austin Apr. 5, 2012, no pet.) (mem. op.) (evidence of causal link must, at a minimum, show that person who took adverse employment action knew of employee's report of illegal conduct).

Finally, as for the fifth factor, Moore directs us to no evidence in the record indicating that the given reasons for her termination were false, other than her own statements that LSSLC's reasons are pretextual. Moore states:

> [LSSLC] claims that the August 1, 2018 hospital incident, coupled with the other items outlined in the warning issued to me on that same day, are the basis for [its] reason to fire me. The reasons given by [LSSLC] for firing me, however, are false and are being used by [LSSLC] for the purpose of covering up the fact that I was being fired because I had gone to the OIG.

According to Moore, it was Anderson, not herself, who should have been disciplined for the August 1 incident, because Anderson allowed the resident to leave in an ambulance without making sure a staff member was following.

Moore's bare assertions that LSSLC's reasons are false and her denial of performance issues are insufficient to create a fact issue as to causation. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 792 (Tex. 2018) (employee's denial of performance issues cited by employer as reason for termination insufficient to create fact issue); *Williams v. Office of the Atty. Gen.*, No. 09-17-00491-CV, 2019 Tex. App. LEXIS 6909, at *40 (Tex. App.—Beaumont Aug. 8, 2019, pet. denied) (mem. op.) (same). Moore directs us to no record evidence that LSSLC's stated reasons were pretextual.

We conclude that LSSLC presented evidence rebutting the presumption of a causal connection in this case and that Moore did not meet her burden to present

10

jurisdictional evidence raising a fact issue as to the existence of a causal connection. Accordingly, we need not address the issue of whether Moore raised a fact issue on the other contested element of her claim. *See* TEX. R. APP. P. 47.1. Therefore, the trial court did not err when it granted LSSLC's plea to the jurisdiction on Moore's Whistleblower claim.

## Conclusion

Moore failed to meet her burden to raise a fact issue causally linking her termination to a report of illegal conduct. Therefore, governmental immunity has not been waived and the trial court lacks subject matter jurisdiction. We affirm the trial court's ruling.

However, where, as here, the plaintiff's pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should ordinarily be afforded the opportunity to amend. *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007); *Miranda*, 133 S.W.3d at 226-27. Accordingly, we conclude that Moore should be offered an opportunity to amend her pleadings. We remand this cause to the trial court for further proceedings consistent with this opinion.

Judy C. Parker
Justice

11