**Melvin Hugh WASHINGTON, Appellant,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, Appellee.**

No. 17600.

Court of Civil Appeals of Texas, Fort Worth.

March 28, 1975.

**314**

Dushman, Greenspan, Kensel & Friedman and Jack T. Friedman and Lowell E. Dushman, Fort Worth, for appellant.

Shannon, Gracey, Ratliff & Miller and Eugene J. Dozier and Bill E. Bowers, Fort Worth, for appellee.

OPINION

BREWSTER, Justice.

This is a Workmen's Compensation case in which the plaintiff, Melvin Hugh Washington, sought to recover benefits for total and permanent disability. The jury found in answer to Issue No. 1 that Washington did not sustain an injury on or about the date he alleged that he had been injured. Based on this verdict the trial court rendered judgment in favor of the defendant, The Aetna Casualty and Surety Company, and plaintiff has appealed.

The plaintiff's 4th point of error is that the jury's answer to Issue No. 1 is so against the great weight and preponderance of the evidence as to be manifestly wrong and there is insufficient evidence or no evidence to support such finding. For convenience we will discuss that point of error first. It is hereby overruled.

Issue No. 1 read: "Do you find from a preponderance of the evidence that the plaintiff received an injury on or about December 31, 1970? Answer: 'We do' or 'We do not.'" The jury's answer was "We do not."

Plaintiff claimed to have hurt his shoulder on or about December 31, 1970. The work he was doing for Royal Tile Manufacturing Company, his employer, at the time he claimed to have been hurt was very hard manual labor consisting of putting broken tile in a wheelbarrow and dumping the wheelbarrow and pushing cars loaded with tile into a dryer. Plaintiff testified that he finished out the day when hurt and then missed the next three days from the job and returned to work on January 4, 1971. He admitted working almost continuously from January 4, 1971, until November 20, 1971. On this last date he said his shoulder popped out of joint while he was asleep and this required him to be taken to the hospital and to later undergo an operation. During the almost 11 months period from January 4, 1971, to November 20, 1971, plaintiff's shoulder did

not ever get out of joint and he never complained to anyone that he could not do the work. Plaintiff admitted that he never went to a doctor for treatment of his alleged shoulder injury of December 31, 1970, until after his shoulder popped out of joint on November 20, 1971. Although he went to a doctor two times during that period for other matters he never complained to the doctor of shoulder pain. Plaintiff testified that after he fell through the top of a dryer and was hurt on December 31, 1970, and got up the plant manager and plant supervisor came over and asked him if he was hurt and that he said "no." The plant manager was not called as a witness and the plant supervisor testified that he was at work on December 31, 1970, and that he did not come upon plaintiff that day after he had fallen through a dryer as plaintiff had said he did. The supervisor also testified that he was the person to whom plant employees were to report their injuries but that plaintiff never told him that he had sustained an injury to his shoulder. The doctor that treated plaintiff and that operated on his shoulder testified that in his opinion plaintiff's shoulder trouble did not arise out of a fall occurring on or about December 31, 1970.

Because of the evidence referred to, the jury's answer to Issue No. 1 was not so against the great weight and preponderance of the evidence as to be manifestly wrong.

■ In this case the burden of proof was on the plaintiff to establish that he had sustained an injury on or about December 31, 1970, as inquired about in Issue No. 1. He failed to get a favorable jury finding in answer to that issue. By answering the issue as it did the jury merely stated that it had not been convinced by a preponderance of the evidence that plaintiff had been injured as he had alleged.

In the case of Ross v. Sher, 483 S.W.2d 297 (Houston, Tex.Civ.App., 14th Dist., 1972, ref., n. r. e.) the appellant was contending that there was no evidence and insufficient evidence to support such a negative jury finding, as does the plaintiff here, and the court on page 299 announced the law applicable under such circumstances as follows:

" 'In situations such as this where a jury returns a negative answer to an issue upon which the proponent has the burden of proof, the jury's negative answer need not be supported by affirmative evidence. Therefore, it avails the complaining party nothing to assert that a negative answer is without support in the evidence or is not supported by factually sufficient evidence. Under these circumstances, the complaining party is placed in the position of having to contend that the evidence establishes an injury as a matter of law. See Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas Law Review, 361, 363 (1960).' Smith v. Safeway Stores, Inc., 433 S.W.2d 217, 218 (Tex. Civ.App.—Tyler 1968, writ ref'd n. r. e.). Appellant's no evidence points of error are overruled."

On the same point see Watkins v. Yancey, 495 S.W.2d 366 (Texarkana, Tex.Civ. App., 1973, no writ hist.).

Because of the rules stated in the two cases just cited we overrule the part of plaintiff's point of error No. 4 wherein he contends that there is no evidence and insufficient evidence to support the jury's answer to Issue No. 1.

The question actually presented to us by plaintiff's first three points of error is whether the trial court committed reversible error by admitting evidence tending to show that after plaintiff's claimed injury of December 31, 1970, that is involved in this suit, the plaintiff sustained another injury on September 8, 1972.

We overrule those three points of error wherein plaintiff contends that reversible error was thus committed.

■ In a workmen's compensation case evidence concerning the nature and extent of subsequent injuries is admissible. Such

evidence is admissible because it is relevant to the issue of whether or not the injury sued on is the producing cause of any incapacity claimed by plaintiff. St. Paul Fire & Marine Insurance Co. v. Murphree, 163 Tex. 534, 357 S.W.2d 744 (1962), and Hartford Accident and Indemnity Co. v. McCardell, 369 S.W.2d 331 (Tex.Sup., 1963).

Because of the rule just announced the plaintiff's contention that the offering by defendant of evidence tending to prove that he had sustained a later injury was an attempt to impeach the plaintiff on a collateral issue is without merit. Such evidence had a material bearing on an issue that was actually an element of plaintiff's cause of action.

Part of the evidence that plaintiff complains of was contained in defendant's Exhibits 4 and 12 (notice of injury and claim for compensation). The last two exhibits named are the same instrument. Apparently one copy of the instrument was identified as defendant's Exhibit No. 4 and another copy of it as defendant's Exhibit No. 12.

The notice of injury and claim for compensation (defendant's Exhibits 4 and 12) contained in substance the following information: that Melvin Washington, Social Security No. 462–82–6236, age 21, whose employer was Royal Tile Mfg. Co., 3600 Conway, Fort Worth, was injured on or about September 8, 1972, in Fort Worth and that he started losing time on that date, and that as of October 16, 1972, he had not returned to work and that while working he hurt his back and other parts of his body, that his mother's name was Oleta Washington, whose address is 4101 Littlejohn in Fort Worth. Someone had signed the name "Melvin Washington" to that notice of injury and claim for compensation.

As stated, during the trial plaintiff denied that he sustained a subsequent injury as of September 8, 1972.

■ The notice of injury and claim for compensation (defendant's Exhibits 4 and 12) contained a statement to the effect that Melvin Washington did sustain a later injury on September 8, 1972, which caused him to lose time from work. If the signature on it was his it would be admissible against him as an admission, because it would be a prior acknowledgment by him that he did sustain a subsequent injury on September 8, 1972, which is one material fact that he was, during the trial, denying. See Hartford Accident and Indemnity Co. v. McCardell, supra.

When plaintiff was first shown the notice of injury and claim for compensation that was identified as defendant's Exhibit 4 and was asked if the signature thereon was his, he answered: "Yes, looks like it." His counsel in his presence then stated: ". . . he didn't say it was his signature. He said it looked like his signature." Thereafter, throughout the rest of the trial, the plaintiff denied that the signature on Defendant's Exhibits 4, 12 and 6 was his and he also denied that he sustained the claimed later injury on September 8, 1972.

■ When the plaintiff testified on one occasion that the signature on the notice of injury and claim for compensation (defendant's Exhibits 4 and 12) relating to plaintiff's alleged later injury of September 8, 1972, was his signature and thereafter testified that it was not his signature, such conflicting evidence created a fact issue for the jury's determination. Conflicting testimony of the same witness on the same issue creates a fact issue for the fact finder to decide. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W. 2d 561 (1952); Durham v. I. C. T. Insurance Co., 283 S.W.2d 413 (Dallas, Tex. Civ.App., 1955, writ dism.); and Republic Heater Co. v. First-Wichita Nat. Bank, 465 S.W.2d 395 (Fort Worth, Tex.Civ. App., 1971, ref., n. r. e.). Plaintiff's conflicting testimony as to whether he did or not sign defendant's Exhibits 4 and 12

made those exhibits admissible in evidence to be considered by the jury in deciding whether plaintiff did or did not actually sign such exhibits.

All of the written documents here complained of that were offered in evidence by defendant to show that plaintiff did in fact sustain a later injury on September 8, 1972, had signed thereon the name "Melvin Washington," which is the plaintiff's name. He at one time or another during the trial denied that he had signed any of those documents.

Plaintiff admitted that his genuine signature does appear on several exhibits that were introduced into evidence.

█ Under these circumstances all of the complained of documents that plaintiff denied signing were admissible in evidence to be considered by the jury in deciding by comparison with the admittedly genuine signatures of plaintiff whether or not the signatures appearing on the exhibits that plaintiff denied signing were in fact his signatures. See Art. 3737b, Vernon's Ann.Civ.St., and Nass v. Nass, 149 Tex. 41, 228 S.W.2d 130 (1950).

Plaintiff contends also in connection with the three points of error being discussed that reversible error was also committed by admitting into evidence defendant's Exhibit 6. It was a hardship affidavit which recited therein in substance that one Melvin Washington who was employed by Royal Tile Manufacturing Company was hurt on the job on September 8, 1972, and that he sustained disability as the result of the injury.

A witness, Kathy Wilson, who was a legal secretary and a notary public, testified that on October 16, 1972, someone appeared before her and at that time signed the name of Melvin Washington to defendant's Exhibits 4, 6, and 12, but that due to the passage of time she could not identify plaintiff as being the man that signed the name of Melvin Washington to those instruments.

Since documents admittedly bearing the genuine signature of the plaintiff, Melvin Washington, were in evidence, defendant's Exhibit 6 was also admissible in evidence so that the jury could compare the signature thereon with the admittedly genuine signatures of plaintiff.

Undisputed evidence that was before the jury was that the social security number recited in defendant's Exhibits 4 and 12 as being the social security number of the Melvin Washington that signed that instrument was the plaintiff's true social security number. The true name and address of plaintiff's mother was also stated in those instruments as being the name and address of the mother of the Melvin Washington that signed those exhibits.

█ We also hold that even if all of the complained of evidence tending to prove the later injury (September 8, 1972) was erroneously admitted into evidence, no reversible error was committed by admitting it because evidence proving such facts was already before the jury without objection.

█ The record shows that when the legal secretary, Kathy Wilson, was on the stand she testified completely as to the entire contents of defendant's Exhibits 4 and 12, which is the notice of injury and claim for compensation, wherein it was stated that Melvin Washington hurt his back and other parts of his body on September 8, 1972, and lost time from work as a result thereof. No objection was made to that evidence when Kathy Wilson testified. The written exhibits, the admission of which is here complained of, tended to prove the same facts.

In instances where witnesses testify without objection to substantially the same matter that is contained in a written instrument that is objected to, any error in admitting the written instrument is harmless. Gulf, Colorado & Santa Fe Railway Company v. DeLeon, 373 S.W.2d 886 (Eastland, Tex.Civ.App., 1963, ref., n. r. e.); Olan Mills, Inc. v. Prince, 336 S.W.2d

**318**

186 (Texarkana, Tex.Civ.App., 1960, no writ hist.); and for many other cases on the point see 4B Tex.Dig. Appeal & Error, ⚷1051(1–c), p. 223.

The judgment is affirmed.