MARY'S OPINION HEADING 



 NO. 12-02-00075-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


ARMANDO MATA,
§
 APPEAL FROM THE THIRD

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


BROOKS PETROLEUM COMPANY,

APPELLEE
§
 ANDERSON COUNTY, TEXAS

 

MEMORANDUM OPINION


 This is an appeal from a summary judgment in an oil field accident case granted in favor of
an oil lease owner and operator against an employee of an independent contractor oil well service
company. Appellee Brooks Petroleum Company ("BPC") moved for summary judgment contending
that (1) it owed no duty to Appellant Armando Mata ("Mata") because it lacked the requisite degree
of control over Mata's employer's work, (2) there was no evidence that Mata's injuries were
attributable to any BPC-controlled activity, and (3) there was no evidence of the essential elements
necessary to prove a premises defect. The trial court granted BPC's motion "for the reasons stated
therein."

 Mata contends that the summary judgment proof raised genuine issues of fact on the question
of duty because there was conflicting evidence regarding the degree of control BPC exercised over
the injury-producing activity. Mata also insists that this is not a premises defect case but a negligent
activity case. Nevertheless, he maintains that he has produced summary judgment proof on each
element necessary in a premises defect case. We reverse the summary judgment and remand the
cause to the trial court.

Background


 BPC owned and operated an oil lease. Randall Brooks ("Brooks") owned BPC. His brother,
Travis ("Travis"), helped oversee field operations. A well on the lease stopped producing oil
because the downhole pump quit working. Brooks hired Turman Well Service to pull the old pump
and replace it with a new one. Turman sent a rod and tubing pulling unit and crew to the well to do
the job. Mata was the derrick man on this crew. In addition to the regular crew, Turman, at Brooks'
request, supplied a tool pusher, Simon Hudnall ("Hudnall").

 The pulling unit started pulling the 9600 feet of sucker rods that connected the downhole
pump to the surface unit on the morning of March 24, 2000. During this operation, they also pulled
out heavy deposits of paraffin which accumulated at the well head to a depth of two and one-half
feet. Brooks was present and discussed the paraffin problem with Hudnall. Nevertheless, Brooks
told Hudnall that he had a new pump coming, and he instructed Hudnall to put the new pump back
in the well when it arrived.

 After lunch, the Turman crew tried to put the new pump back down in the well, but they
could get it to go no deeper than 750 feet before it was stopped by accumulating paraffin. Hudnall
then called Travis, reported the difficulty, and suggested pouring diesel fuel down the tubing to
dissolve or loosen the paraffin plug. He received Brooks' permission to try the diesel fuel treatment. 
But after pouring twenty to thirty gallons of diesel down the tubing, the pump stuck again after
progressing less than 300 feet.

 Once again, Hudnall called Brooks and told him that they were stuck and that in his opinion,
a hot oil job would be required to get the pump back down to the proper depth. Brooks ordered a
hot oil truck and called Hudnall to tell him that a hot oil truck would not be available until the next
morning. Brooks instructed Hudnall to pull the new pump out of the well that afternoon so that the
hot oil job could be started the next morning.

 The accident occurred while the Turman pulling unit attempted to pull the sucker rods and
new pump back out of the hole. In this process, the pulling unit operator ordinarily pulls a strand
of three twenty-five-foot sucker rods at a time. In order to know when he has pulled three rods, the
operator counts the rod boxes (couplings) between each sucker rod as they emerge from the hole. 
He then disengages the pulling action of the pulling unit, the strand is uncoupled by the crew, and
the process is repeated.

 In this case, paraffin accumulations covered the rod boxes preventing the operator from
correctly counting them, and stopping the pulling action. Instead, the rod blocks continued to ascend
and crashed into the rig's crown block causing the rig to overturn. Mata rode the eighty-foot rig mast
to the ground suffering severe injuries.

 In the opinion of Mata's expert, Brooks was negligent in not ordering a hot oil job when
Brooks first saw the amount and consistency of the paraffin after the old pump was pulled and before
the attempt to replace it with the new one. He expresses the opinion that Brooks was also negligent
in ordering the removal of the new pump when it became stuck. In his opinion, the correct course
would have been to apply the hot oil down the tubing casing annulus (the space between the casing
and the tubing).


Standard of Review


 BPC moved for summary judgment asserting there was no evidence of BPC's right of control
over the injury-producing activity and no evidence that Mata's injuries were related to a condition
or activity BPC supervised. BPC also contended that summary judgment was proper because Mata
had produced no evidence proving the four elements necessary to establish BPC's responsibility for
injuries due to a premises defect. See Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 296 (Tex.
1983). A trial court must grant summary judgment unless the non-movant produces more than a
scintilla of evidence raising a genuine issue of material fact on the challenged elements. See Tex.
R. Civ. P. 166a(i); Morgan v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000). In deciding whether there
is a material fact issue precluding summary judgment, evidence favorable to the non-movant will
be taken as true; every reasonable inference must be indulged in favor of the non-movant and any
doubts resolved in its favor. See Hughes Wood Products, Inc. v. Wagner, 18 S.W.3d 202, 205
(Tex. 2000). When a trial court grants summary judgment without specifying the grounds, the
summary judgment must be affirmed on appeal if any of the grounds advanced are meritorious. See
Weiner v. Wasson, 900 S.W.2d 316 (Tex. 1995).



Applicable Law


 An owner or occupier of land generally has a duty to use reasonable care to make and keep
the premises safe for business invitees. Redinger v. Living, Inc., 689 S.W.2d 415, 417 (Tex. 1985). 
A general contractor in control of the premises is charged with the same duty as an owner or
occupier. Id. In the instant case, BPC had a dual role as owner of the lease, and as the operator-general contractor who hired the independent contractor, Turman Well Service. This duty to keep
the premises in a safe condition may subject the general contractor in control of the premises to
direct liability for its negligence (1) attributable to a premises defect, or (2) attributable to an activity
on the property. Id.

 Ordinarily, an owner or occupier of land has no duty to insure that an independent contractor
performs its work in a safe manner. Abalos v. Oil Dev. Co., 544 S.W.2d 627, 631 (Tex. 1976). But
a duty may arise where the employer retains "some control over the manner in which the independent
contractor's work is performed." Redinger, 689 S.W.2d at 418. In Redinger, our supreme court
adopted section 414 of the Restatement (Second) of Torts, which provides, as follows:


 One who entrusts work to an independent contractor, but who retains the control of any part of the
work, is subject to liability for physical harm to others for whose safety the employer owes a duty to
exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.



Restatement (Second) of Torts § 414 (1965). In order for a section 414 duty to arise, a general
contractor need not exercise or retain that degree of control over the subcontractor's work that would
subject it to liability as a master under the law of agency. The comments to section 414 further
define the degree of control necessary to give rise to a duty.


 In order for the rule stated in this Section to apply, the employer must have retained at least some
degree of control over the manner in which the work is done. It is not enough that he has merely a
general right to order the work stopped or resumed, to inspect its progress or to receive reports, to
make suggestions or recommendations which need not necessarily be followed, or to prescribe
alterations and deviations. Such a general right is usually reserved to employers, but it does not mean
that the contractor is controlled as to his methods of work, or as to operative detail. There must be
such a retention of a right of supervision that the contractor is not entirely free to do the work in his
own way.



Id. § 414, cmt. c. The duty to exercise reasonable care is commensurate with the control retained;
the more detailed the general contractor's control over the independent contractor's work, the greater
the scope of the general contractor's liability. Hoechst-Celanese Corp. v. Mendez, 967 S.W. 354,
355 (Tex. 1998). For the general contractor to be liable for negligence, however, its control must
relate to the injury-causing condition or activity. Clayton W. Williams, Jr., Inc. v. Olivo, 952
S.W.2d 523, 528 (Tex. 1997).

 A party can prove "right of control" either by evidence of a contractual agreement explicitly
retaining a right to control the owner or the general contractor, or by evidence that the owner or
general contractor actually exercised control over the job. Coastal Marine Serv. v. Lawrence, 988
S.W.2d 223, 226 (Tex. 1999). Whether a contract gives a right of control is generally a question of
law for the court rather than a question of fact for the jury. See Lewis Constr., Inc. v. Harrison, 70
S.W.3d 778, 783 (Tex. 2001). The determination of whether the general contractor exercised the
requisite degree of control to give rise to a duty is a question of fact for the jury. Id.


Discussion


Right of Control

 Our review of the record leads us to the conclusion that Mata produced more than a scintilla
of evidence raising a fact issue as to whether the degree of control exercised by BPC was sufficient
to give rise to a duty to Mata.

 BPC paid to have Hudnall oversee the Turman crew. Hudnall described his duties as
follows:


 Tool pusher primarily deals with the operator [BPC] as to what - - he takes orders from the operator
as to what he wants him to do. His primary job is to keep the rig running. He is out there in case
something breaks down or something, like to get it fixed if the company man is not there on location,
to deal with him by phone or beforehand on what he wants done, how he wants it done. . . .



Hudnall further testified that he would have done what Randall or Travis Brooks said to do.

 Turman, the owner of the well service company, testified that "if we get into anything in the
job that's different from normal, then he [Brooks] is advised and he will make a decision as to what
he wants to do and what he don't want to do." Brooks stated that he expected his order to be obeyed
when he directed the tool pusher to pull the stuck pump back out of the hole, so that no time would
be lost getting the hot oil job the next day.

 There is probative summary judgment evidence that Brooks exercised this recognized
authority to do more than order work to start or stop, inspect progress and receive reports. Brooks
was at the location during the morning while the Turman crew pulled the old pump out of the hole. 
He noted the presence of very heavy paraffin deposits on the rods hanging in the rod basket in the
derrick. He discussed the paraffin problem with the tool pusher. However, despite the problem, he
told the tool pusher "the [new] pump is coming, when you get out of the hole, put the new pump on,
go back in the hole with it." This is one of the decisions characterized as negligent by Mata's expert. 
When the new pump stuck going back in the hole, Hudnall sought and obtained Brooks' permission
to use diesel fuel to dissolve the paraffin. When that failed, Hudnall again consulted Brooks telling
them "we need hot oil." Brooks ordered a hot oil truck for the next morning. Then he ordered
Hudnall to pull the pump out of the hole. Travis was with Brooks when it was decided to pull the
stuck pump. "I know we (Randall and Travis Brooks) made the decision to pull it back out," he
recalled. He explained that they wanted a good hot oil job and they did not want a $200 per hour hot
oil truck to have to wait.

 Mata was injured during the pulling of the new pump. Mata's expert also characterized as
negligent Brooks' decision to pull the new pump before a hot oil treatment. BPC cites conflicting
evidence that supports its view that Brooks exercised no control over the operations conducted on
its lease that day, but merely made suggestions or recommendations. The testimony of several of
the witnesses was self-contradictory. However, conflicting testimony of the same witness on the
same issue creates a fact issue for the fact finder to decide. See, e.g., Washington v. Aetna Cas. &
Surety Co., 521 S.W.2d 313, 316 (Tex. Civ. App.-Fort Worth 1975, no writ). Moreover, in deciding
whether there is a material fact issue precluding summary judgment, it is the evidence favorable to
the non-movant that must be taken as true; Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d
170, 173 (Tex. 1995); evidence that favors the movant's position will not be considered unless
uncontroverted. Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d
41, 47 (Tex. 1965).

 In an effort to negate any control on its part over the operation that injured Mata, BPC
attempts to define that activity as narrowly as possible. BPC argues that it did not control "the actual
activity of pulling the sucker rods." BPC argues "there is no evidence that Brooks supervised,
instructed or retained control over Marcelo Gonzales' [the rig operator] counting of the rod boxes
while Turman Well Services pulled the rods in their work changing the pump." BPC's burden would
be lighter if our inquiry was limited only to the pulling of the sucker rods. But a proper inquiry
cannot be so circumscribed. It should take into account the other events and decisions
comprehended in the job of replacing the pump, decisions and instructions that, according to Mata's
expert, negligently caused the new pump to become stuck 750 feet down the hole. This led in turn
to Mata's injury during the retrieval of the pump while the sucker rods were covered with paraffin. 
As the comments to section 414 of the Restatement explain, the degree of control over operative
detail that BPC argues is necessary to give rise to a duty under section 414 would be sufficient to
subject BPC to liability as a master under the principles of agency. But Mata did not need to produce
evidence showing that level of control in order to defeat summary judgment. Section 414 applies
when the general contractor retains or exercises some control over the manner in which the
independent contractor's work is performed, but does not retain or exercise that degree of control
which would subject him to liability as a master. Redinger, 689 S.W.2d at 418.

 BPC argues "that the independent contractor was merely advising [Brooks] about the general
situation." BPC contends that Brooks did no more than make suggestions and recommendations,
but that there is no evidence that he gave any orders or instructions as to "methods of work" or
"operative detail." However, as we read the record, there is abundant evidence that Brooks exercised
close control over the manner, method and operational details of the job. Throughout the day as
problems arose, Turman, the tool pusher on the rig, looked to Brooks for instructions and orders on
the manner and means of proceeding with the work. We conclude that the evidence raises a fact
issue as to whether the degree of control exercised by BPC was sufficient to give rise to a duty under
section 414 of the Restatement.

Injury Related to Brooks' Actions

 BPC argues that since Brooks did not directly supervise the pulling of the sucker rods (but
only ordered it), Mata's injuries were not attributable to Brooks' actions, but solely to the negligence
of Turman's rig operator. This argument ignores evidence that Brooks, knowing of the dense
paraffin accumulation, told Hudnall to go back in the hole with the new pump. When the new pump
stuck 750 feet down the hole, Brooks ordered it pulled out prior to the hot oil treatment. Mata's
expert called it negligence not to apply hot oil before both of these actions, and he expressed the
opinion that Mata's injuries were the direct result of Brooks' negligent action. The summary
judgment proof at least raises a fact issue as to whether Mata's injuries were related to Brooks'
action.

Negligent Activity or Premises Defect

 In its motion for summary judgment, BPC contended this is a premises defect case, and that
Mata not only failed to produce evidence of BPCs' exercise of control over the work that produced
the defect, but that Mata also failed to produce proof of the four elements necessary to show a breach
of that duty (citing Olivo, 952 S.W.2d at 527). In Olivo, the supreme court held that in order to
recover under a premises defect theory, the plaintiff must establish both the general contractor's right
to control the defect-producing work, and a breach of that duty according to the traditional premises
defect elements. Id. Those elements are set out in Corbin, as follows:



 that the defendant had actual or constructive knowledge of some condition on the premises;
 that the condition posed an unreasonable risk of harm to the plaintiff;
 that the defendant did not exercise reasonable care to reduce or eliminate the risk; and
 that the defendant's failure to use such care proximately caused the plaintiff's injuries.




Corbin, 648 S.W.2d at 296. Mata, however, contends this is not a "premises defect" case, but an
"activities" case, and that he did not need to produce proof of the Corbin elements, even though the
evidence raises them. BPC sees the facts in Olivo as analogous and argues that the holding therein
should be dispositive in this case. We disagree. It is true that both Olivo and the instant case involve
an injury claim against an oil lease operator by an employee of an independent contractor. But the
analogy goes no further. Olivo slipped as he stepped off a pipe rack and fell several feet to the
ground falling on his back onto a premises defect, one of several drill pipe thread protectors left there
during the previous shift. Mata, on the other hand, alleged injuries sustained during the overturn of
the workover rig caused by Brooks' operating decision to pull the pump (and the sucker rods) when
it was unsafe to do so.

 Recovery on a negligent activity theory requires that the plaintiff be harmed by or as a
contemporaneous result of the activity itself rather than by a condition created by the activity. Olivo,
952 S.W.2d at 527. Mata's injuries were contemporaneous with the pulling of the pump, and were
the result of the allegedly negligent decision to conduct that activity. This is a negligent activity
case. Mata had no burden to produce proof of the Corbin elements, and summary judgment on the
ground that he failed to come forward with such evidence was not proper.

 Construing the evidence in the light most favorable to the non-movant, Mata, we conclude
that there was evidence sufficient to raise a fact issue as to whether BPC owed Mata a duty to
exercise reasonable care, and whether it breached that duty. Therefore, the summary judgment must
be reversed.

 The cause is reversed and remanded to the trial court.




 BILL BASS 

 Justice



Opinion delivered April 23, 2003.

Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by
assignment.

















(PUBLISH)