# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00560-CV

---

**Steve Person, Jim Walesa, and Trident Healthcare Properties I, LP, Appellants**

**v.**

**MC-Simpsonville, SC-1-UT, LLC, Appellee**

---

### FROM THE 368TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 19-0651-C368, THE HONORABLE RICK J. KENNON, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellee MC-Simpsonville, SC-1-UT, LLC brought suit against Steve Person, Jim Walesa, and Trident Healthcare Properties I, L.P. (collectively, "the Guarantors") for breach of a guaranty agreement. The trial court granted summary judgment in favor of MC-Simpsonville against all defendants as to liability. The court then conducted a bench trial as to damages and attorney's fees, following which the court rendered judgment for MC-Simpsonville for compensatory damages, pre- and post-judgment interest, attorney's fees, and court costs totaling approximately $2.8 million. On appeal, the Guarantors assert four issues complaining of the summary judgment as to liability, the award of attorney's fees, and the award of pre-judgment interest. We will affirm in part and reverse and remand in part.

### Factual and Procedural Background

MC-Simpsonville, as landlord, and MCA Simpsonville Operating Company, LLC, as Tenant (a non-party to the lawsuit), entered into a lease agreement for the Tenant to

operate an assisted living facility. Concurrent with the lease, Person, Walesa, and Trident Healthcare Properties signed an agreement guaranteeing the Tenant's performance under the lease. At some point the Tenant stopped paying rent, and MC-Simpsonville subsequently filed suit against the Guarantors asserting breach of the guaranty agreement.

The trial court granted MC-Simpsonville's combined traditional and no-evidence motion for summary judgment against the Guarantors as to liability. The court then held a bench trial as to damages and attorney's fees. At the conclusion of the trial, the court rendered judgment against the Guarantors for damages, interest, and attorney's fees totaling approximately $2.8 million. The attorney's fee award was approximately $250,000.

On appeal, the Guarantors assert four issues complaining that (1) the trial court erred in considering summary judgment evidence that was filed untimely without leave of court; (2) they were released from liability under the terms of the guaranty agreement itself; (3) the award of attorney's fees was improper on several grounds; and (4) the trial court erred in relying on inadmissible hearsay to calculate the amount of interest awarded.

## Discussion

### I. *Improper Consideration of Summary Judgment Evidence*[1]

In their first issue, the Guarantors complain that the trial court erred by improperly considering summary judgment evidence that was submitted untimely by MC-Simpsonville without leave of court. Specifically, they complain that one day before the summary judgment hearing MC-Simpsonville tendered to the court a 302-page document that was referred to as "Plaintiff's binder of authorities with table of contents." Guarantors argue that this document contained summary judgment evidence and at least one discovery product that had

---

[1] The standards for our review of a summary judgment are well established and will not be repeated here. *See JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021).

not been previously filed or referred to in the summary judgment motion. The Guarantors assert that the consideration of the "Binder" by the court violated the requirements in Texas Rule of Civil Procedure 166a(c) and (d) that supporting documents be filed by the movant at least 21 days before the summary judgment hearing. MC-Simpsonville, in contrast, asserts that its Binder raised no new grounds for summary judgment and added no new material evidence.

We need not address these opposing arguments, however, because even though the Guarantors attached a copy of the Binder as an appendix to their brief in this Court, it was never filed with the trial court and is not part of the appellate record. Accordingly, we may not consider it. *See*, *e.g.*, *Hammer v. Hammer*, No. 03-18-00715-CV, 2021 WL 1916481, at *3 (Tex. App.—Austin May 13, 2021, no pet.) (mem. op.) ("[An a]ppellate court cannot consider documents or hearings that are cited in the brief and attached as appendices if they are not formally included in the record on appeal." (quoting *Burke v. Insurance Auto Auctions Corp.*, 169 S.W.3d 771, 775 (Tex. App.—Dallas 2005, pet. denied))); *Bell v. State ex rel. S.E.G.*, No. 08-20-00149-CV, 2021 WL 937457, at *1 (Tex. App.—El Paso Mar. 11, 2021, no pet. h.) (mem. op.) ("[W]e may not consider documents in an appendix that are not in the appellate record."); *Ahmed v. Sosa*, 514 S.W.3d 894, 896 (Tex. App.—Fort Worth 2017, no pet.) ("[W]e may not consider a document cited in a brief and attached as an appendix if it is not formally included in the record on appeal.").

It is an appellant's burden to show error on appeal. *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) ("The burden is on the appellant to see that a sufficient record is presented to show error requiring reversal."); *Dee v. Crosswater Yacht Club, LP*, No. 03-10-00796-CV, 2012 WL 1810213, at *6 (Tex. App.—Austin May 18, 2012, no pet.) (mem. op.) (same). Moreover, "[i]f the pertinent summary judgment evidence considered by the

trial court is not included in the appellate record, an appellate court must presume that the omitted evidence supports the trial court's judgment." *Enterprise Leasing Co. v. Barrios*, 156 S.W.3d 547, 550 (Tex. 2004); *see also McKinnon v. Wallin*, No. 03-17-00592-CV, 2018 WL 3849399, at *3 (Tex. App.—Austin Aug. 14, 2018, pet. denied) (mem. op.) ("The appellate record also does not contain the summary judgment motions or evidence so we must presume that the omitted documents supported the trial court's summary judgment rulings.").

Because we may not consider the Binder attached as an appendix to the Guarantors' brief and must presume that the document supports the trial court's summary judgment, we hold that the trial court has not been shown to have erred or abused its discretion by considering untimely summary judgment evidence.

## II. *Release from Liability under the Terms of the Guaranty Agreement*

In their second issue, the Guarantors assert that they were released from liability under the terms of the guaranty agreement itself. Paragraph 12 of the guaranty agreement states as follows: "Upon demonstration that the parent corporation of Tenant has a net worth in excess of Fifty Million Dollars ($50,000,000.00) the principals of said corporation signing below shall be released from this Guaranty." It is undisputed that Memory Care America ("MCA") is the parent corporation of the Tenant. In response to MC-Simpsonville's motion for summary judgment, the Guarantors attached the affidavit of Jim Walesa, who averred in conclusory terms that "MCA's net worth exceeds $50,000,000.00." The Guarantors argue that Walesa's affidavit testimony, combined with the foregoing provision of the guaranty agreement, created a fact issue as to whether Guarantors were released from their obligation by the terms of the agreement, thereby making summary judgment improper. For its part, MC-Simpsonville argues that for various reasons Walesa's affidavit is not sufficient to demonstrate MCA's net worth.

Again, however, we do not have to address those opposing arguments. The guaranty agreement provided in a different section that the Guarantors' "liabilities and obligations" are "immediately due and payable . . . upon the occurrence of a default under the lease":

> All of the Liabilities and the obligations of the undersigned hereunder *shall be immediately due and payable* by the undersigned, anything contained herein to the contrary notwithstanding, *immediately upon the occurrence of a default under the Lease* which continues beyond the expiration of the applicable notice and/or grace period, if any, under the Lease.

(Emphasis added.) It is undisputed that the Tenant had defaulted in its obligations under the lease before MC-Simpsonville filed suit and that the Guarantors had been notified of the Tenant's default. Therefore, the Guarantors' obligations under the agreement had likewise arisen before Walesa's affidavit testimony. In like manner, the Guarantors' breach of those obligations had also preceded Walesa's testimony.

Under the terms of the guaranty agreement, the release of the Guarantors would occur only "upon demonstration" that MCA's net worth exceeded $50,000,000. The phrase "upon demonstration" is similar to the kind of conditional language that is often associated with the creation of a condition precedent to an obligation under a contract. *See, e.g.*, *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 109 (Tex. 2010) ("In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included." (quoting *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990))). The only difference here is that "upon demonstration" is used in reference to the *release* from an obligation rather than the *creation* of one. The effect of the conditional language is the same, however, i.e., the status quo is not altered until the occurrence of the event that is named as the

5

condition for a new status. Thus, the new status—whether it be the creation of an obligation or the release of one—does not come into being until the event occurs. Accordingly, the Guarantors could not have been released from their obligation to guarantee the Tenant's performance under the lease until MCA's net worth was demonstrated to exceed $50,000,000. And assuming arguendo that Walesa's affidavit was sufficient to make such a demonstration, that did not occur until after the Guarantors had already defaulted in their obligations under the guaranty agreement.

Under settled Texas law, "[a] claim for breach of contract accrues when the contract is breached." *Cosgrove v. Cade*, 468 S.W.3d 32, 39 (Tex. 2015). Thus, MC-Simpsonville's claim against the Guarantors accrued prior to Walesa's affidavit testimony. And the termination of a contractual obligation does not release the obligor from a prior breach. *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 66 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("[T]erminating the contract does not excuse Gulf Liquids's breach of its obligation to pay that occurred prior to the time that it exercised its right to terminate."); *cf. Anadarko Petrol. Corp. v. Williams Alaska Petrol., Inc.*, 737 F.3d 966, 971 (5th Cir. 2013) ("When a contract terminates, 'all obligations which are still executory on both sides are discharged *but any right based on prior breach or performance survives*.'" (emphasis added; quoting Tex. Bus. & Com. Code § 2.106(c)).

Accordingly, assuming without deciding that Walesa's affidavit testimony was sufficient to trigger the release provision of paragraph 12 of the guaranty agreement, the Guarantors were not released from their prior breach. In response to the Guarantors' second issue, we hold that the Guarantors' summary judgment response did not create a genuine issue of material fact as to their release from liability under the guaranty agreement.

### III. *Prejudgment Interest*

In their issue number four the Guarantors complain that the trial court erred in overruling their hearsay objection to MC-Simpsonville's evidence pertaining to the prejudgment interest awarded in the judgment. Regarding the amount of interest that would be charged to the Tenant for late payments, the lease agreement provides as follows:

> Interest shall accrue on all sums not paid when due hereunder at the lesser of: (a) the highest rate allowed by law or (b) *an interest rate equal to the Prime Rate as published in The Wall Street Journal* from time to time plus five percent (5%) (the "Interest Rate"), from the due date until paid.

(Emphasis added.)

MC-Simpsonville's witness who testified about the interest charged to the Tenant stated that he had obtained the prime rate from an internet website.[2] The Guarantors objected that his source of information regarding the prime rate was hearsay. The trial court overruled the hearsay objection and included in the final judgment an award of $198,436.54 for contractual prejudgment interest.

Although the Guarantors do not assert that the *amount* of interest awarded was incorrect, they do argue that since the witness had relied on hearsay information to determine the prime rate, his interest calculation based on that information did not form a proper basis for the award of any prejudgment interest.

---

[2] This witness's testimony was inconsistent regarding whether he had gotten the information from the Wall Street Journal website or a different website, but any such conflict in his testimony would merely create a fact issue for the trial court to resolve. *See Ford v. Panhandle & Santa Fe Ry.*, 252 S.W.2d 561, 563 (Tex. 1952) ("It was [the jury's] province also to resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses."); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 819 n.90 (Tex. 2005) (quoting *Ford*); *Washington v. Aetna Cas. & Sur. Co.*, 521 S.W.2d 313, 316–17 (Tex. Civ. App.—Fort Worth 1975, no writ) ("Conflicting testimony of the same witness on the same issue creates a fact issue for the fact finder to decide.").

We disagree. Texas Rule of Evidence 803(17) provides the following hearsay exception:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . . .
>
> (17) Market Reports and Similar Commercial Publications. Market quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations.

Tex. R. Evid. 803(17). We believe this exception encompasses one type of information frequently found on the Internet, and it has been specifically applied to interest-rate information. In *Elliott Associates, L.P. v. Banco de la Nacion*, 194 F.R.D. 116, 121 (S.D.N.Y. 2000), the court held that the plaintiff's expert report had properly relied on prime rates of interest obtained from the Federal Reserve Board website because they were reliable under Federal Rule of Evidence 803(17). *See also Triple Crown Am., Inc. v. Biosynth AG,* No. CIV. A. 96-7476, 1999 WL 305342, at *2 (E.D. Pa. May 14, 1999) ("Rule 803(17), however, is limited to a published tabulation, compilation or collection of objective factual data such as stock market closings, currency exchange rates, bank interest rates, weights and measurements or similar information."); *Lorraine v. Markel Am. Ins.*, 241 F.R.D. 534, 575 (D. Md. 2007) (citing *Elliott Associates* and quoting the advisory committee's note to the federal rule: "The basis of trustworthiness is general reliance by the public or by a particular segment of it, and the motivation of the compiler to foster reliance by being accurate."). Federal Rule of Evidence 803(17) is essentially identical to Texas Rule 803(17).

In response to the Guarantors' fourth issue, we hold that the trial court did not err in overruling the hearsay objection to testimony regarding the calculation of contractual interest

8

to be charged against the Tenant under the terms of the lease and, accordingly, in including an award of prejudgment interest against the Guarantors in the final judgment.

### IV. Attorney's Fees Award

In their issue number three, the Guarantors challenge the trial court's award of attorney's fees to MC-Simpsonville. In the trial on damages and fees, MC-Simpsonville presented evidence that it had incurred approximately $266,000 in attorney's fees and requested such an award. After taking the matter under advisement, the trial court reduced that amount by approximately 10%, awarding MC-Simpsonville $248,074 in attorney's fees.

The Guarantors complain that (1) MC-Simpsonville's attorney's fees invoices were so heavily redacted as to preclude evaluation of the reasonableness and necessity of the fees awarded, (2) the fees awarded improperly include charges for clerical work, and (3) there was insufficient evidence to support an award for in-house counsel fees. In response, MC-Simpsonville argues, on several grounds, that it produced sufficient proof of the reasonableness and necessity of the fees.

The law in the area of fee-shifting has been recently clarified by the supreme court's opinion in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019). With certain exceptions, each party in Texas generally must pay its own attorney's fees. *Id.* at 483. One of the exceptions is a case in which a plaintiff prevails in a suit for breach of contract. Tex. Civ. Prac. & Rem. Code § 38.001 ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."). The party seeking an award of attorney's fees must prove the reasonableness and necessity of the requested fees. *Rohrmoos*, 578 S.W.3d at 484.

9

Both reasonableness and necessity "are questions of fact to be determined by the fact finder." *Id.* at 489.

In *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), the supreme court identified several non-exclusive factors to assist the fact finder in determining the reasonableness and necessity of attorney's fees. *See Rohrmoos*, 578 S.W.3d at 493-94. Fifteen years after *Arthur Andersen*, the court introduced the lodestar calculation to provide additional guidelines for determining reasonableness and necessity:

> Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps. First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. The court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. The court may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.

*El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). The basic facts needed for proof of the reasonableness of hours under the lodestar method are "(1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked." *Id.* at 762-63. The court in *El Apple* held that "[t]o establish the number of hours reasonably spent on the case, the fee application and record must include proof documenting the performance of specific tasks, the time required for those tasks, the person who performed the work, and his or her specific rate." *Id.* at 765.

A year after *El Apple* the court noted that "a lodestar calculation requires certain basic proof, including itemizing specific tasks, the time required for those tasks, and the rate charged by the person performing the work." *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013). A year after *Montano* the court decided *Long v. Griffin*, 442 S.W.3d 253 (Tex.

10

2014), in which it further emphasized the importance of evidence showing specific tasks that had

been performed by each attorney:

> Here, as in *El Apple* and *Montano*, the affidavit supporting the request for attorney's fees only offers generalities. It indicates that one attorney spent 300 hours on the case, another expended 344.50 hours, and the attorneys' respective hourly rates. The affidavit posits that the case involved extensive discovery, several pretrial hearings, multiple summary judgment motions, and a four and one-half day trial, and that litigating the matter required understanding a related suit that settled after ten years of litigation. *But no evidence accompanied the affidavit to inform the trial court [of] the time spent on specific tasks.... [W]ithout any evidence of the time spent on specific tasks, the trial court had insufficient information to meaningfully review the fee request.*

*Id.* at 255 (emphasis added).

The most recent and arguably the most emphatic rejection of generalities about

the tasks performed by attorneys was delivered in *Rohrmoos*, in which the court stated:

> [S]ome courts have decided that testimony about an attorney's experience, the total amount of fees, and the reasonableness of the fees complies sufficiently with *Arthur Andersen* to support an attorney's fee award. We have clearly held, however, that generalities such as these are not sufficient to support a fee-shifting award under the lodestar method, which applies in fee-shifting situations.

578 S.W.3d at 496 (citations omitted). The court went on to summarize the type of

evidence required:

> We reaffirm today that the fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts. Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services.

*Id.* at 498. But the court was not through. Wanting to further emphasize these points, the court continued:

> General, conclusory testimony devoid of any real substance will not support a fee award. Thus, a claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought. Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services.

*Id.* at 501-02 (citations omitted).

The court then analyzed the testimony of the attorney for the prevailing party, who testified that the large fee he was requesting had been necessitated by the obstreperous conduct of his opposing counsel. The court sympathized but did not back off its requirement that the specific tasks performed must be described:

> We also understand Howard's position that opposing counsel's actions drove the cost of litigation, in most instances, and that made UTSW's $800,000 in requested attorney's fees necessary, even reasonable. However true this may be, Howard's justification for why his fees should be $800,000—searching through "millions" of emails and reviewing "hundreds of thousands" of papers in discovery, more than forty depositions taken, and a forty-page motion for summary judgment—is too general to establish that the requested fees were reasonable and necessary. *Without detail about the work done, how much time was spent on the tasks, and how he arrived at the $800,000 sum, Howard's testimony lacks the substance required to uphold a fee award.*

*Id.* at 505 (emphasis added, footnote omitted).

With the foregoing supreme court instructions in mind, we turn to the present case. In response to the Guarantors' complaints, MC-Simpsonville first argues that because the trial court awarded fees under Chapter 38 of the Texas Civil Practice and Remedies Code,

12

sections 38.003 and 38.004 of the Code alone are sufficient to prove reasonableness and support the fee award. We disagree. The referenced sections provide:

> 38.003. It is presumed that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable. The presumption may be rebutted.
>
> 38.004. The court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in:
> (1) a proceeding before the court; or
> (2) a jury case in which the amount of attorney's fees is submitted to the court by agreement.

Tex. Civ. Prac. & Rem. Code §§ 38.003, .004.

Section 38.004 allows the trial court to take judicial notice of the usual and customary fees but says nothing about reasonableness and necessity. Section 38.003, on the other hand, creates a rebuttable presumption that the usual and customary fees are reasonable. But it is well settled in Texas that "[a] presumption is simply a rule of law requiring the trier of fact to reach a particular conclusion in the absence of evidence to the contrary. . . . The presumption disappears when evidence to the contrary is introduced." *Temple Indep. Sch. Dist. v. English*, 896 S.W.2d 167, 169 (Tex. 1995); *see also Zimmerman Truck Lines, Inc. v. Pastran*, 587 S.W.3d 847, 863 (Tex. App.—El Paso 2019, no pet.) ("A presumption is not evidence and vanishes when positive evidence to the contrary is introduced."). As this Court has recognized, when contrary evidence is introduced "the case proceeds as if no presumption ever existed." *Texas A & M Univ. v. Chambers*, 31 S.W.3d 780, 784 (Tex. App.—Austin 2000, pet. denied).

In the present case, counsel for the Guarantors testified in some detail that in his opinion the attorney's fees requested by MC-Simpsonville were neither reasonable nor necessary. With this contrary evidence, the presumption created by section 38.003 of the Civil Practice and Remedies Code disappeared, requiring the case to proceed "as if no presumption

13

ever existed." *Id.* We must therefore look to the evidence submitted by MC-Simpsonville to determine whether the record contains sufficient proof of the reasonableness and necessity of the requested attorney's fees.

At the trial, MC-Simpsonville produced three forms of evidence in support of its request for an award of attorney's fees: (1) resumes of the two principal attorneys who worked on the case, (2) testimony from those two attorneys, and (3) redacted billing records.

### Resumes of attorneys

The resumes of the two main attorneys for MC-Simpsonville show them to be experienced and highly respected attorneys. Because "the experience, reputation, and ability of the lawyer or lawyers performing the services" may be among the factors that a factfinder should consider when determining the reasonableness of a fee, *see Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), resumes can be helpful. But resumes do not provide a description of the specific work performed and therefore cannot show the reasonableness or necessity of that work. For that we must look to the other evidence submitted.

### Redacted billing records

MC-Simpsonville submitted extensive billing records from the three law firms one or more of whose attorneys and legal professionals worked on the case. Every bill, however, was heavily redacted, a great many to the point that it was difficult if not impossible to discern what specific tasks had been done. An entry on a particular date might, for example, read something like "telephone call with [redacted] regarding [redacted]." Such redacted billing records do contain some important information, such as the identity of the legal professional who did the work, the date the work was done, the billing rate charged for the work, and the number

14

of hours worked. But it is essentially impossible for a finder of fact to determine whether the work done was reasonable and necessary without knowing what the specific tasks were.

Other Texas courts have struggled recently with the problem of redacted billing records. In *McGibney v. Rauhauser*, 549 S.W.3d 816 (Tex. App.—Fort Worth 2018, pet. denied), for example, the 2nd Court of Appeals held that there was insufficient evidence to support the trial court's award of fees where "[s]ome entries were so heavily redacted that the trial court could not possibly have had sufficient evidence to determine that the entire amount requested was 'not excessive or extreme, but rather moderate or fair.'" *Id.* at 821 (quoting *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016)). In *In re Estate of Poe*, 591 S.W.3d 607 (Tex. App.—El Paso 2019, pet. filed), the trial court had awarded the prevailing party far less attorney's fees than he had requested due to the heavy redactions in the billing records admitted into evidence. The 8th Court of Appeals affirmed this part of the trial court's judgment, holding that "[w]e also accord the trial court latitude to reject redactions that prevent it from meaningfully evaluating the reasonableness and necessity of the legal services on the billing entries." *Id.* at 653. In *Eggemeyer v. Hughes*, 621 S.W.3d 883 (Tex. App.—El Paso 2021, no pet.), the 8th Court reversed the portion of the trial court's judgment segregating attorney's fees where there was no testimony on that subject at the trial and the billing records admitted into evidence were too heavily redacted to identify the fees that were related to a claim for which attorney's fees were recoverable: "[W]hile the record contains attorney's fee bills supporting the total fee, the majority of entries would not allow any obvious basis to segregate the recoverable from the unrecoverable. The subject of many entries is redacted." *Id.* at 897.

It is important to keep in mind that, as the 2nd Court of Appeals recently noted, "the operative question is whether the trial court had sufficient evidence to exercise its

15

discretion, not whether the billing records were or were not redacted." *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *16 n.21 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied) (mem. op.).  It is not improper to redact billing records to preserve attorney-client privileged communications before offering them into evidence.  But the party seeking an award of attorney's fees has the burden to demonstrate the reasonableness and necessity of the fees requested under the standards, discussed above, set forth in the *Rohrmoos* opinion and others.  We recognize that this may require some delicate balancing of interests.

In the present case, while some of the billing entries in the record showed with reasonable clarity the *types* of tasks that were performed, the redactions eliminated virtually all specificity about those tasks and therefore largely prevented a meaningful evaluation of their reasonableness and necessity.  For example, the majority of entries on the redacted billing records show only that an attorney or other legal professional had a telephone conference with somebody about something, emailed somebody about something, discussed something with somebody, reviewed something, researched something, drafted something, coordinated something, or worked on something.  As a whole, the redacted billing records admitted in evidence were not sufficient, in light of the supreme court's admonitions in *Rohrmoos* concerning the need to identify specific tasks performed, to allow the trial court to evaluate the reasonableness and necessity of hours worked that gave rise to nearly a quarter million dollars of attorney's fees.  Accordingly, we next examine the testimony of the two principal attorneys for MC-Simpsonville.

### Attorney testimony

MC-Simpsonville's two attorneys who testified both described the tasks they had performed only in generalities.  As to the work performed, one testified only that she was

16

"familiar with the correspondence in this case, the pleadings, discovery, the motions, the hearings, and I've reviewed the fee statements." The other likewise spoke in generalities:

> The work performed by me and those with my law firms was reasonable and necessary for prosecuting plaintiff's claims in this case, and all of the work was prudently and efficiently performed. . . . I have spent 200 hours performing legal work on this case. In my opinion, all of this work was reasonable under the circumstances and appropriate and efficiently performed.

This witness blamed a substantial part of his required work on obstacles created by the Guarantors, necessitating two venue-transfer hearings, two hearings on motions to compel discovery, and the filing of two motions for summary judgment: "Ultimately in this case, this has been a case of delay, delay, delay. . . . [T]he bulk of the work in this case was necessitated by defendants' delay actions." But the testimony of both attorneys lacks the requisite detail about the specifics of the work they and other legal professionals performed.

As discussed above, the lodestar method requires a showing of both reasonable and necessary hours worked and a reasonable hourly rate. *Rohrmoos*, 578 S.W.3d at 498. Without detailing it, we believe the evidence here is sufficient to show that the *rates* charged by MC-Simpsonville's attorneys were reasonable. In light of the supreme court's requirement of specificity regarding the services performed, however, we conclude that the evidence of reasonableness and necessity of the hours worked does not meet the supreme court's standards. The billing records were too obscured by redactions, and the testimony of the two primary attorneys for MC-Simpsonville was too general, to allow the trial court to determine whether the hours worked were reasonable and necessary. Therefore, the evidence presented by MC-Simpsonville was not sufficient for a meaningful review of the fee application. Accordingly, we hold that the proof in this case did not provide the trial court legally sufficient evidence to calculate a reasonable fee award using the lodestar method.

17

## Conclusion

We reverse the portion of the trial court's judgment awarding attorney's fees to MC-Simpsonville and remand the case to the trial court for a redetermination of such fees.[3] We affirm the trial court's judgment in all other respects.

_____

J. Woodfin Jones, Justice

Before Justices Goodwin, Triana, and Jones[*]

Affirmed in Part; Reversed and Remanded in Part

Filed:   August 27, 2021

[*]Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. See Tex. Gov't Code § 74.003(b).

---

[3] *See Porter v. Porter*, No. 04-20-00229-CV, 2021 WL 2117923, at *5 (Tex. App.—San Antonio May 26, 2021, no pet.) (mem. op.) ("Because attorney's fees were authorized but the evidence was insufficient under *Rohrmoos* to support the amounts awarded, the proper remedy is to reverse the awards and remand the case for a new hearing on fees."); *Sloane v. Goldberg B'Nai B'Rith Towers*, 577 S.W.3d 608, 622 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("The proper remedy in cases where the evidence fails to satisfy the standards for determining fees under the lodestar method is to remand the issue for a redetermination of fees.").